**POLYGON PRODUCTS CO. v. KANT–RUST PRODUCTS CORPORATION et al.**

(Circuit Court of Appeals, Third Circuit. November 14, 1924.)

No. 2980.

Patents ⬅⮞328—1,333,363, for compound for penetrating interior corrosion, held not anticipated.

The Abbott patent, No. 1,333,363, for a compound for penetrating interior corrosion, consisting of a colloid, a penetrant, and a lubricant, and used for disengaging rusted parts, *held* not anticipated by the Acheson patents, Nos. 966,636 and 1,030,372, for a lubricant.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by the Polygon Products Company against the Kant-Rust Products Corporation and others. On petition of the Acheson Oildag Company for leave to intervene and for rehearing. Petition denied.

For prior opinion, see 292 F. 569, which reversed decree 291 F. 702.

Alan M. Johnson, of New York City, for appellant.

John S. Parker, of New York City, for intervener Acheson Oildag Co.

Charles Neave, of New York City, for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. Subsequent to the filing of the opinion in this case, reported in 292 F. 571, the Acheson Oildag Company presented a petition to this court for leave to intervene. It also prayed for a rehearing, on the ground that the patent of Abbott here in controversy was void, because its combination of a colloid, a penetrant, and a lubricant was anticipated by Acheson's patents, No. 966,636, of August 9, 1910, for a lubricant, and No. 1,030,372, of June 25, 1912, for a method of preparing dehydrated mixtures. It was further contended that our decision, if allowed to stand, might seriously affect the sale by the petitioner of its Acheson oildag, although it was making such oildag under patents which antedated the Abbott patent here in suit. After argument and full consideration, we are not moved by either of these contentions.

By reference to our opinion, it will be seen that in our view Abbott's patent made a novel, useful, and patentable invention in the combination of a colloid, a lubricant, and a penetrant, whereby his mixture was able to enter, in a way those conversant with the art would not believe possible, between rusted, attached, and solidified metal surfaces, and allow them to be quickly and easily disengaged. The defendant, by using Acheson's oildag as a colloid,[1] but adding thereto coal tar as a lubricant and a suitable penetrant, was also able to disengage solidified, rusted, adjacent metal parts in precisely the same way as Abbott. But the defendant contended that its combination and practice had been already disclosed in Acheson's patent granted some 10 years before.

We cannot accede to this contention. A study of Acheson's first patent shows that its disclosure was for a lubricant for lessening or avoiding friction, not between attached, solidified, metal surfaces, but between revolving parts. This Acheson did by using deflocculated graphite and mixing with it light hydrocarbon oils, which, as he says, "do not for practical purposes possess lubricating qualities." Acheson's problem dealt with interrevolving surfaces; Abbott's, with interlocked surfaces. Acheson's aim was to prevent frictional engagement between moving working parts; Abbott's was to allow temporary detachment between parts intended to be functionally locked against movement. Abbott's problem was analogous to unfastening a lock by a chemical substitute for a key; in other words, a chemical mixture was the force, instead of a wrench or a hammer and cold chisel. Acheson's problem was to ease contiguous revolving surfaces. The problems and spheres of the two inventors were different, and the solution of Acheson's problem in 1909 threw no light on Abbott's problem in 1916, and that Acheson's disclosure did not forestall is practically shown by the fact that, when Abbott disclosed his combination to the art, such art at first refused to use it, on the ground that it was an impossibility to affect rust-attached surfaces in the way Abbott disclosed. The novelty and originality, and indeed the pioneer character of Abbott's disclosure, is evidenced by the fact

---

[1] From the testimony of Professor Jackson: "Q. You refer, Professor, to the books stating that Acheson's deflocculated graphite is generally recognized as a colloid. Have you any books here with you that substantiate that statement? A. There are four in my brief case. This is a regular text-book, 'The Chemistry of Colloids,' by Zsigmondy Spar, page 266, 'Colloidal Graphite.' Although carbon is found in a very fine state of subdivision in many oils, coal tars, etc., the best known example of colloidal carbon is deflocculated Acheson graphite in water or oil suspension. These solutions are known technically as waterdag and oildag, respectively, names given to them by the inventor, and are used *extensively in lubrication.* 'Theoretical and Applied Colloid Chemistry,' Ostwald and Fisher, page 182: 'An interesting and characteristically American product, consisting of an element in colloid form, is the so-called Acheson graphite. I have shown you this before under the name "aqua" as a dispersion in an aqueous medium. I show it to you again dispersed in a mineral oil under the name of oildag. These two preparations, which are each used as *lubricants* prove on investigation to be typical colloids. This fact is revealed by ultramicroscopic examination, by the migration of the black field in electric field, by precipitating effects, etc. Various tests for colloids.'"

he had to create a sphere and market for its use.

Finding Acheson occupied a different field, and did not anticipate Abbott, it follows that Abbott's later patent in no way interfered with the marketing of Acheson's earlier disclosed oildag. The defendants did not buy such dag and sell it, but their infringing act consisted in mixing it as a colloid with a penetrant and lubricant to form the combination which Abbott disclosed. But, apart from the fact that the Acheson Company is perfectly free to market their oildag, the plaintiff company tenders an acknowledgment of its right so to do.

In accordance with these views, the petition for rehearing and intervention is dismissed, at the cost of the petitioner, and a mandate in the form already approved will go down to the court below for further procedure.